211 S.E.2d 349 (1975)
WEST VIRGINIA HUMAN RIGHTS COMMISSION
v.
TENPIN LOUNGE, INC., et al.
No. 13386.
Supreme Court of Appeals of West Virginia.
January 21, 1975.
*350 A. Andrew MacQueen, III, Asst. Atty. Gen., Charleston, for appellant.
No appearance for appellee.
CAPLAN, Justice:
This is an appeal from an action instituted in the Circuit Court of Monongalia County pursuant to the provisions of The West Virginia Human Rights Act. W.Va. Code, 1931, 5-11-1 et seq., as amended. Therein, the West Virginia Human Rights Commission, hereinafter sometimes called Commission, sought to enforce specific performance of a conciliation agreement entered into between it and the Tenpin Lounge, Inc., by Patrick Rundle, its president. Upon the return of an adverse jury verdict and the entry of a judgment thereon, the Commission filed and served a motion for judgment notwithstanding the verdict and in the alternative a motion for a new trial in accordance *351 with Rule 59 of the West Virginia Rules of Civil Procedure. Upon the denial of such motions the Commission prosecuted this appeal.
The West Virginia Human Rights Act was enacted by the Legislature in 1967. This act, reflecting the public policy of the State of West Virginia in the field of human relations, is designed to prohibit discrimination in employment, in housing accommodations and places of public accommodations by reason of race, religion, color, national origin, ancestry, sex or age.
The action by the Commission in the instant case involves a charge that the defendant, Tenpin Lounge refused membership to certain persons because of their race. The Tenpin Lounge is a state licensed private liquor club located in Morgantown. Complaint was made against said club and its president charging that early in 1969 two Negro residents of Morgantown were refused membership in the Tenpin Lounge because of their race. This resulted in an investigation by the Commission which thereafter made a determination that probable cause existed to substantiate the charges. in accordance with procedures of the Commission, representatives of the Tenpin Lounge were contacted and it was determined that the matter could be resolved without any administrative hearing.
After some negotiations between the Tenpin Lounge and the Commission a conciliation agreement was executed on October 23, 1969. By the terms of this agreement the Tenpin Lounge adopted a policy of nondiscrimination with regard to admission to membership and service. By the admission of the complainants to membership and execution of the aforesaid agreement the matter was closed as satisfactorily adjusted.
Approximately one year later the Commission received complaints from two other Negro residents of Morgantown charging that the Tenpin Lounge had denied them service and admission to membership because of their race. Again an investigation was undertaken by the Commission and as a result thereof it was determined that the charges were substantiated. The conciliation agreement referred to above is expressly authorized under the provisions of W.Va. Code, 1931, 5-11-8(d)(4), as amended. The Commission, on December 16, 1970, instituted an action in the Circuit Court of Monongalia County alleging that the Tenpin Lounge had violated the provisions of said conciliation agreement and sought specific performance thereof. This was done under the express provisions of W.Va. Code, 1931, 5-11-8(d)(5), as amended. In its answer to the complaint the Tenpin Lounge and Patrick Rundle, its president, denied the material allegations of the complaint and demanded a jury trial. Prior to the trial the Commission, under the provisions of Rule 39(a)(2), R.C.P., filed a motion to disallow a jury in the trial of this matter. The motion was argued and denied by the court.
On May 21, 1971 a jury was selected and the trial began. Two questions were submitted to the jury as follows:
1. Has the Tenpin Lounge denied or refused its
facilities, privileges, or services to any person
after October 23, 1969, solely on the basis
that he or she was of the Negro race?
 _____ _____
 Yes No
2. On October 5, 1970, was Philip Mack refused
or denied the facilities, privileges, or services
of the Tenpin Lounge solely because he was
not an orderly and respectable person?
 _____ ______
 Yes No
The first question was answered in the negative and the second in the affirmative. No instructions were submitted to the jury by the court. Counsel for the Commission, immediately upon return of the verdict, advised the court that he had information which indicated that three jurors on the trial panel had committed perjury in responding to voir dire questioning prior to the selection of the jury. Counsel represented to the court that there was a possibility that two jurors, contrary to their affirmations, were affiliated with an organization which discriminated against Negroes *352 in its membership policy and that one juror, contrary to his affirmation, was, in fact, a member of the Tenpin Lounge. Counsel then moved the court to make inquiry to determine the truth of these possibilities and, if true, to declare a mistrial. This motion was summarily denied by the court.
On November 15, 1971 final judgment was entered in accordance with the jury verdict and the action for specific performance was dismissed. Within ten days the Commission filed and served its Motion For Judgment Notwithstanding Verdict and In the Alternative For New Trial. This was filed under the provisions of Rule 59, R.C.P.
The two main grounds assigned by the Commission in support of its motion were: (1) the defendant was not entitled to a trial by jury, and, (2) certain jurors falsely swore under oath during voir dire examination regarding memberships in organizations, fraternities and clubs which discriminate against members of the Negro race. Upon the hearing of that motion counsel for the Commission advised the court that certain jurors had been summoned to testify. The court refused to hear such jurors and after considerable discussion denied the motion. It is from the order denying said motion that this appeal was prosecuted.
The principal errors assigned are that (1) the court erred in allowing a jury trial; (2) the court erred in refusing to permit the Commission to interrogate certain trial jurors to determine the truth or falsity of their statements during the voir dire examination.
"The right of trial by jury as declared by the Constitution or statutes of the State shall be preserved to the parties inviolate." Rule 38, R.C.P. Rule 39(a), R.C.P. provides that when a trial by jury has been demanded the action shall be designated on the docket as a jury action and shall be tried by a jury unless "(2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the State." Thus, it is established that if the court finds that a right of trial by jury does not exist under the constitution or statutes of the state, a jury trial may be denied.
It has been held generally that one is not entitled to a jury trial of equitable issues. That an action for specific performance is equitable was forcefully demonstrated by the court in Klein v. Shell Oil Company, 386 F.2d 659 (8 Cir., 1967), as follows: "The authorities are unanimous in holding that the remedy of specific performance is purely equitable in nature... Traditionally, there has been no right to a trial by jury in an action for specific performance presenting issues which are purely equitable ..." See 5 Moore's Federal Practice, § 38.21 (2nd ed. 1974); 9 Wright and Miller, Federal Practice and Procedure, Civil, section 2308.
The instant case presents issues in equity in that its main objective is to enforce specific performance of the conciliation agreement. As indicated by the questions submitted to the jury, however, there are also questions of fact to be determined. In view of the above discussion it is clear that the defendant is not entitled, as a matter of right, to a jury trial of the equitable issues. This does not, however, preclude that court, in its discretion, from acceding to the demand of the defendant to hold a jury trial. Here, the defendant demanded a jury trial; here, it appears that a showing was made under Rule 39(a)(2), R.C.P. that the right to a jury trial did not exist; here, the court permitted a trial by jury. We are of the opinion that the court was permitted to exercise discretion under Rule 39(a)(2), R.C.P. and that he did not abuse his discretion in allowing a jury trial. See Wright & Miller, Federal Practice and Procedure: Civil § 2334.
This matter may be summed up by the following quote from 2B Barron and Holtzoff, Federal Practice and Procedure, § 873, p. 32 (Rules ed. 1961): "The usual practice is to try the legal issues to the jury *353 and to try the equitable issues to the court. Where there are some issues common to both the legal and equitable claims, the order of trial must be such that the jury first determines the common issues. The court may, if it chooses, submit all the issues to the jury. There is no constitutional right to a trial without a jury and reversible error cannot be predicated upon the submission of equitable issues of fact to a jury." We adhere to the principles so expressed and accordingly find that the plaintiff's position is without merit. See Hurwitz v. Hurwitz, 78 U.S.App.D.C. 66, 136 F.2d 796, 148 A.L.R. 226 (1943); Lugar & Silverstein, W.Va.Rules, p. 308; Wright & Miller, Federal Practice and Procedure: Civil § 2334.
The second error assigned by the appellant presents for consideration the voir dire examination of prospective jurors and the import to be attributed thereto. Specifically, we are asked if the trial court committed reversible error in refusing to permit the Commission, subsequent to the verdict, to examine certain jurors to determine if they swore falsely during the voir dire examination.
The jury returned a verdict, the effect of which was to exonerate the defendant of the charge of racial prejudice. Thus, in a case of this nature, the Commission should be permitted on voir dire to ask questions pertinent to the subject matter so that it might intelligently exercise its right of striking the jury. The jurors were asked if any of them were members of the Tenpin Lounge or were members of any organization which systematically excluded Negroes from membership or participation. Two jurors who answered in the affirmative were removed by the Commission by the exercise of its peremptory challenges. As noted above, other jurors were suspected of having answered such questions falsely.
Voir dire examination is designed to allow litigants to be informed of all relevant and material matters that might bear on possible disqualification of a juror and is essential to a fair and intelligent exercise of the right to challenge either for cause or peremptorily. Such examination must be meaningful so that the parties may be enabled to select a jury competent to judge and determine the facts in issue without bias, prejudice or partiality. As said in State v. Stonestreet, 112 W.Va. 668, 166 S.E. 378 (1952), quoting from State v. Lohm, 97 W.Va. 652, 125 S.E. 758 (1924), "Another requisite of a fair trial is a fair jury." Clearly, then, a fair trial requires a meaningful and effective voir dire examination.
In the instant case counsel for the Commission was permitted to ask the jurors about their affiliation with organizations which systematically excluded Negroes from membership. As a general rule, this is a permissible inquiry, if such inquiry is relevant and of significance to the case. See State v. Stonestreet, supra; Lauderdale v. State, 233 Ark. 96, 343 S.W.2d 422 (1961). State v. Higgs, 143 Conn. 138, 120 A.2d 152, 54 A.L.R.2d 1199 (1956); 47 Am.Jur.2d Jury, § 195 et seq. The purpose of such questions is to afford to the parties a fair and impartial jury, a requisite of a fair trial. We, therefore, perceive no valid reason for a trial court to refuse to follow through, even after verdict, to determine the truth or falsity of the jurors' voir dire answers when such answers are brought into question. Only by this determination can the ultimate goal, a fair trial, be reached.
The appellant does not contend, nor could it successfully, that mere membership in an organization which practices racial discrimination is a ground for challenge of a juror for cause. State v. McMillion, 104 W.Va. 1, 138 S.E. 732 (1927). Significantly, however, the Court therein held that counsel for the defendant nevertheless "had a right in good faith to inquire of the jurors whether they were members of such an organization, in order to make a more intelligent exercise of the right of striking the jury." The Court then noted that in other *354 jurisdictions it had been held to be error to refuse to permit such examination.
The appellant does contend, however, that if the voir dire answers of certain jurors were false and such jurors were in fact members of an organization which systematically excluded Negroes from its membership, its right to intelligently use the peremptory challenge is materially diminished. The following language in 47 Am.Jur.2d, Jury, § 209 supports the Commission's view:
There is authority that if a juror falsely misrepresents his interest or situation on voir dire examination, or conceals a material fact relevant to the controversy, he is guilty of misconduct, and such misconduct is prejudicial to the party, for it impairs his right to challenge, and it may be ground for a new trial.
In State v. Dean, 134 W.Va. 257, 58 S.E.2d 860 (1950), this Court reversed a judgment reflecting a jury verdict on the ground that a juror had sworn falsely on voir dire examination. In that case the defendant, a Negro woman, was convicted of first-degree murder without recommendation, which was tantamount to a death sentence. Upon motion to set aside the verdict it was alleged that a juror, after the case had been concluded, had made several harsh statements reflecting his strong racial prejudice against Negroes, including a direct statement that he had voted for conviction because the defendant was a Negro. The trial court had asked several questions on voir dire as to whether any prospective juror was "prejudiced against the members of the Negro race." The juror in question answered in the negative. The Court held that if such juror had committed perjury, the defendant did not receive a trial by a fair and impartial jury and that a new trial must be awarded.
The Commission relies heavily on the decision in the Dean case. While that case involved a death sentence, which doubtless influenced the Court in some degree, and strong evidence of concealed prejudice on the part of a juror, we adhere to the principles expressed therein. The Court said that to warrant a new trial on the ground that a juror subject to challenge for cause was a member of the jury which returned the verdict, the defendant had the burden of proving that (1) said juror was disqualified, (2) that defendant was diligent in his efforts to ascertain the disqualification and (3) prejudice or injustice resulted from the juror's participation.
An examination of the record reveals that the second and third criteria were satisfied. The appellant asked the necessary questions on voir dire and could do no more. This being a case pertaining to racial prejudice, a strong presumption exists that an injustice resulted if a prospective juror did not answer a relevant and material question truthfully. In its effort to meet the burden of showing the disqualification of the subject jurors, the Commission sought to interrogate said jurors. The trial court refused to permit such examination and summarily dismissed further consideration of this most pertinent matter. In the circumstances of this case, the action of the court constituted reversible error.
We are not unmindful of the decisions in this jurisdiction which hold generally that statements or testimony of jurors will not be received to impeach their verdict. The cases in which these decisions were rendered, however, concern circumstances which reveal alleged juror misconduct during the trial or during jury deliberation and are not controlling here. As noted in State v. Dean, supra, this Court has held that a judgment may be reversed when it appears that a juror has sworn falsly on voir dire.
Just as the trial court has discretion over voir dire examination, so should it have discretion on the question of whether a new trial should be granted because of false answers given by a prospective juror on such examination. In the exercise of its discretion in the latter instance a trial court should, when requested, permit interrogation *355 of the prospective juror to determine the truth or falsity of such answers and the relevancy thereof to the case under consideration. Here the request was made by counsel for the Commission and summarily denied by the court.
Considering the nature of this case and the questions and answers on voir dire, we are of the opinion that the refusal of the court to grant the request for a hearing constituted error necessitating a new trial. For the reasons stated herein the judgment of the Circuit Court of Monongalia County is reversed and the case is remanded for a new trial.
Reversed and remanded for a new trial.