IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 12-1534

_____

FILED

**February 20, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JACKIE L. BROWN, II,
Plaintiff Below, Petitioner

v.

THE CITY OF MONTGOMERY, A MUNICIPAL CORPORATION;
AND JAMES F. HIGGINS, JR., INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS MAYOR OF THE CITY OF MONTGOMERY,
Defendants Below, Respondents

_____

Appeal from the Circuit Court of Fayette County
The Honorable Paul M. Blake, Jr., Judge
Civil Action No. 12-C-211

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

_____

Submitted: January 15, 2014
Filed:  February 20, 2014

Michael T. Clifford, Esq.                    Vaughn T. Sizemore, Esq.
Richelle K. Garlow, Esq.                     Bailey & Wyant, PLLC
Law Office of Michael T. Clifford            Charleston, West Virginia
Charleston, West Virginia                    Counsel for the Respondents
Counsel for the Petitioner

JUSTICE BENJAMIN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

2.     "The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge." Syl., *Harless v. First National Bank*, 162 W. Va. 116, 246 S.E.2d 270 (1978).

3.     "To identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. pt. 2, *Birthisel v. Tri-Cities Health Services*, 188 W. Va. 371, 424 S.E.2d 606 (1992).

4.     "Inherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person." Syl. pt. 3, *Birthisel v. Tri-Cities Health Services*, 188 W. Va. 371, 424 S.E.2d 606 (1992).

5. "[A] discharged employee may . . . maintain a common law claim for retaliatory discharge against the employer based on alleged sex discrimination or sexual harassment because sex discrimination and sexual harassment in employment contravene the public policy of this State articulated in the West Virginia Human Rights Act, *W. Va. Code*, 5-11-1, *et seq.*" Syl. pt. 8, *Williamson v. Greene*, 200 W. Va. 421, 490 S.E.2d 23 (1997).

6. "A cause of action may be maintained by a plaintiff employee as against another employee under the West Virginia Human Rights Act. Further, the cause of action may properly be based upon an allegation that the defendant employee aided or abetted an employer engaging in unlawful discriminatory practices." Syl. pt. 4, *Holstein v. Norandex, Inc.*, 194 W. Va. 727, 461 S.E.2d 473 (1995).

7. "W. Va. Code 5-11-9(7)(C) (1992), prohibits an employer or other person from retaliating against any individual for expressing opposition to a practice that he or she reasonably and in good faith believes violates the provisions of the West Virginia Human Rights Act." Syl. pt. 11, *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995).

8. It is a violation of a substantial public policy of this State for an employer to discriminate against an employee for refusing to retaliate against another employee who has filed a racial discrimination claim against the employer.

9. "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45 – 46 (1957)." Syl. pt. 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).

10. "A public executive official who is acting within the scope of his authority and is not covered by the provisions of W. Va. Code, 29-12A-1, *et seq.*, is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known. There is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive." Syl., in part, *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992).

11. "The term 'person' as defined and utilized within the context of the West Virginia Human Rights Act, includes both employees and employers. Any contrary interpretation, which might have the effect of barring suits by employees against their supervisors, would be counter to the plain meaning of the statutory language and contrary to the very spirit and purpose of this particular legislation." Syl. pt. 3, *Holstein v. Norandex*, 194 W. Va. 727, 461 S.E.2d 473 (1995).

Benjamin, Justice:

Petitioner Jackie L. Brown, II appeals the November 16, 2012, order of the Circuit Court of Fayette County that granted the motion to dismiss of Respondents City of Montgomery and Mayor James F. Higgins, Jr., in the petitioner's wrongful discharge action.[1] Because we find that the petitioner stated a claim for discharge in contravention of a substantial public policy, we reverse the circuit court's order on that issue and remand for further proceedings.

## I. FACTS

Petitioner Jackie L. Brown, II was a police officer employed by Respondent City of Montgomery (hereinafter "the City") from 2007 until 2011. In approximately 2009, the petitioner accepted the position of Chief of Police of the Montgomery Police Department under the authority of Respondent James F. Higgins, Jr., the Mayor of the City of Montgomery.

During the petitioner's tenure with the police department, another officer, Lieutenant James Ivy, instituted a legal action against the City for racial discrimination and violations of his constitutional rights. The suit ultimately settled.

---

[1] The circuit court's order also denied the petitioner's motion to file an amended complaint, but the petitioner does not assign this ruling as error.

1

In November 2011, the petitioner's employment with the City was terminated. In June 2012, the petitioner filed a complaint in the Circuit Court of Fayette County against both the City and Mayor Higgins. In his complaint, the petitioner alleged, in relevant part, the following:

> 4. On or about April 7, 2011, one James Ivy, fellow Montgomery City police officer, instituted a civil action against the City of Montgomery and Mayor Higgins alleging racial discrimination and constitutional violations with regard to his employment with the city. The case was ultimately settled.
>
> 5. During the periods of his employment, the defendants directed the plaintiff to retaliate against the said James Ivy for Ivy's filing of the law suit against the City. They specifically asked plaintiff to place a GPS device in Ivy's cruiser to track his whereabouts[.] Plaintiff refused to obey the Orders of the Police Department in regard to James Ivy.
>
> 6. Defendant Higgins often ordered the Plaintiff to do things that were not consistent with the laws of the State of West Virginia. When Plaintiff refused and pointed out the illegality of such orders, Defendant would become enraged and verbally abusive.
>
> 7. On November 29, 2011, the defendant James F. Higgins, Jr., presented to the plaintiff a discharge letter terminating his employment with the City of Montgomery and which letter failed to state the reasons for said termination and failed to provide a pre-termination hearing as required by the statutes of the State of West Virginia, specifically West Virginia *Code* § 8-14A-1 *et seq.*

The petitioner asserted two causes of action in his complaint. First, he averred that he was discharged without a pre-termination hearing in violation of W. Va. Code § 8-14A-1 *et seq.* Second, the petitioner claimed that he was discharged in contravention of public policy. Specifically, the petitioner stated:

2

14. The defendants' actions constitute an unlawful discharge in contravention of public policy of the State of West Virginia, as outlined in Harless v. First National Bank of Fairmont, 162 W. Va. 116, 246 S.E.2d 270 (1978). The plaintiff's termination was motivated in whole or in part by retaliation and in contravention of a substantial public policy, including but not limited to the public policy against retaliation or intimidation of police officers for refusing to retaliate against or otherwise harass and intimidate individuals for purposes unrelated to the prevention of crime, all contrary to West Virginia Code § 61-5-27, as amended, among other statutes.[2]

(Footnote added.) The respondents subsequently filed a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. In their motion, the respondents first asserted that the petitioner was not entitled to a pre-termination hearing. In support of this assertion, the respondents posited that because the City of Montgomery is a Class III city with a police department that is not governed by civil service statutes, the petitioner was not entitled to a pre-termination hearing. In addition, the respondents argued that as chief of police the petitioner served at the will and pleasure of the mayor. Finally, the respondents contended that the statute relied on by the petitioner in his complaint provides that only an officer accused of wrongdoing is entitled to a pre-termination hearing and that the petitioner was not an accused officer under that statute.

---

[2] W. Va. Code § 61-5-27 (1999) makes it a crime to obstruct legal proceedings by intimidating or retaliating against public officers, employees, jurors, and witnesses. We do not deem this code section particularly applicable to the petitioner's cause of action. However, as we indicate later in this opinion, this is not fatal to the petitioner's complaint.

3

Second, the respondents argued in their motion to dismiss that they are entitled to qualified immunity. According to the respondents, the only specific request made of the petitioner by the mayor was to place a GPS device in Officer Ivy's police car. The respondents further averred that placing a GPS device in a city-owned police car is not illegal. Finally, the respondents contended that the petitioner's complaint does not include an allegation of a violation of a specific law that Mayor Higgins would have known he was violating when he requested the petitioner to place the GPS device in Officer Ivy's police car.

By order dated November 16, 2012, the circuit court granted the respondents' motion to dismiss. First, the circuit court agreed with the respondents that because the petitioner held the at-will position of police chief, he was not entitled to a pre-termination hearing. The circuit court also found that because the petitioner was not terminated for alleged wrongdoing, he was not "an accused officer" for purposes of the pre-termination hearing statute. Further, the circuit court found that the respondents are entitled to qualified immunity. In support of its finding, the circuit court reasoned that the petitioner staked his entire retaliation claim on the single allegation of being fired for refusing to place a GPS tracking device in Officer Ivy's police car. The circuit court found, however, that placing a GPS device in a city-owned police car is not unlawful. Therefore, the circuit court concluded that because the respondent's alleged conduct did not violate clearly established laws of which a reasonable official would have known and

4

was not fraudulent, malicious, or otherwise oppressive, the respondents are entitled to qualified immunity.

## II. STANDARD OF REVIEW

In this appeal, the petitioner challenges the circuit court's granting of the respondents' motion to dismiss. We previously have indicated that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

## III. DISCUSSION

### A. *Pre-termination Hearing*

In his first assignment of error, the petitioner alleges that he was wrongly denied a pre-termination hearing pursuant to W. Va. Code § 8-14A-3 (1997). The petitioner explains that even though the position of chief of police is an at-will position, he was a police officer for the City prior to his appointment as chief of police, and he never ceased to be a police officer when he became police chief. According to the petitioner, his termination letter from Mayor Higgins specified that the petitioner was not only relieved of his position of police chief but also terminated from employment with the City as a police officer.[3]

---

[3] The petitioner's termination letter is not included in the appendix.

5

The respondents counter that pursuant to W. Va. Code § 8-1-3(3) (1969), the City of Montgomery is a Class III city, and its police department is a non-civil service department.[4] As a result, the petitioner was not subject to civil service protections but rather served as an at-will employee.[5] In addition, the City argues that the pre-termination hearing required by W. Va. Code § 8-14A-3 applies only to officers accused of wrongdoing. The City concludes that because the petitioner was not accused of wrongdoing, he was properly terminated at the will and pleasure of the mayor.

This Court finds no error in the fact that the petitioner was terminated absent a pre-termination hearing. While the pre-termination hearing provision of W. Va. Code § 8-14A-3, appears to apply to both civil service and non-civil service police departments, *see* W. Va. Code § 8-14A-1(4)(b) (1997) (explaining operation of a hearing board for "noncivil service police departments"), the statute provides that only "an accused officer" is entitled to a pre-termination hearing. Specifically, W. Va. Code § 8-14A-3(a) states that "[b]efore taking any punitive action against an accused officer, the police . . . department shall give notice to the accused officer that he or she is entitled to a hearing on the issues by a hearing board or the applicable civil service commission." The term "accused officer" is defined in W. Va. Code § 8-14A-1(1) as "any police officer . . .

---

[4] According to W. Va. Code § 8-1-3(3), "[e]very municipal corporation with a population in excess of two thousand but not in excess of ten thousand shall be a Class III city[.]"

[5] *See e.g.,* W. Va. Code § 8-14-7(a) (2013) (providing that "[i]n every Class I and Class II city having a paid police department, there shall be a 'Policemen's Civil Service Commission.'")

6

who is the subject of an investigation or interrogation which results in a recommendation of punitive action against him or her." As the circuit court found, the petitioner did not allege in his complaint that he was "an accused officer" under the statutory definition. Consequently, the petitioner was not entitled to a pre-termination hearing pursuant to W. Va. Code § 8-14A-3.

The petitioner opines, however, that the circuit court's construction of the statute cannot be correct. The petitioner explains that under the circuit court's rationale, a police officer could be deprived of his or her right to a hearing simply by being terminated for no reason instead of being terminated for alleged wrongdoing. We reject the petitioner's argument.

It is undisputed that the police department of the City of Montgomery is a non-civil service police department. Significantly, while a member of a civil service police department can be terminated only for just cause, *see* W. Va. Code § 8-14-20(a) (1996) (stating that "[n]o member of any paid police department subject to the civil service provisions of this article may be removed, discharged, suspended or reduced in rank or pay except for just cause"), the same is not true of a member of a non-civil service police department. If this Court were to agree with the petitioner that a member of a non-civil service police department can be terminated only after a finding of wrongdoing in a pre-termination hearing, we would be granting members of non-civil service police departments the same protections as members of civil service police

7

departments, a position which is inconsistent with statutory law. This we decline to do. Therefore, we find no error in the circuit court's finding that it was not improper to terminate the petitioner's position as a police officer absent a pre-termination hearing, and we affirm the circuit court's ruling on this issue.

### B. Discharge in Contravention of Public Policy

#### 1. Viability of Petitioner's Cause of Action

In his second assignment of error, the petitioner contends that the circuit court erred in granting the respondents' motion to dismiss his claim for discharge in contravention of public policy. According to the petitioner, his complaint pleaded sufficient facts to support his claim that he was terminated for his refusal to retaliate against Officer Ivy for Officer Ivy's filing of a racial discrimination claim against the City.

First, this Court agrees with the petitioner that refusing to retaliate against Officer Ivy for his filing of a racial discrimination claim against the City constitutes a substantial public policy of this State. In the Syllabus of *Harless v. First National Bank*, 162 W. Va. 116, 246 S.E.2d 270 (1978), this Court held:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

8

"To identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. pt. 2, *Birthisel v. Tri-Cities Health Services*, 188 W. Va. 371, 424 S.E.2d 606 (1992). Also, "[i]nherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person." Syl. pt. 3, *Id.* The sources of the public policy at issue in this case are found in the State's Human Rights Act, W. Va. Code §§ 5-11-1 *et seq.*, and the holdings of this Court.

There can be no dispute that providing equal opportunity for employment regardless of race constitutes a substantial public policy of this State. According to W. Va. Code § 5-11-2 (1998),

> [i]t is the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment[.] Equal opportunity in the area[] of employment . . . is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, age, blindness or disability. . . .
> The denial of these rights to properly qualified persons by reason of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society.

In accord with W. Va. Code § 5-11-2, this Court held in Syllabus Point 8 of *Williamson v. Greene*, 200 W. Va. 421, 490 S.E.2d 23 (1997), in part:

> [A] discharged employee may . . . maintain a common law claim for retaliatory discharge against the employer based on alleged sex discrimination or sexual harassment because sex

9

discrimination and sexual harassment in employment contravene the public policy of this State articulated in the West Virginia Human Rights Act, *W. Va. Code*, 5-11-1, *et seq.*

Also, this Court has indicated that "[t]he West Virginia Human Rights Act . . . reflect[s] the public policy of the State of West Virginia in the field of human relations[] [and] is designed to prohibit discrimination in employment . . . by reason of race, religion, color, national origin, ancestry, sex or age." *W. Va. Human Rights Comm. v. TenPin Lounge*, 158 W. Va. 349, 350–51, 211 S.E.2d 349, 351 (1975).

Of particular significance to this case is W. Va. Code § 5-11-9(7) (1998), which provides that it shall be an unlawful discriminatory practice

> [f]or any person[] [or] employer . . . to:
> (A) Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section;
> (B) Willfully obstruct or prevent any person from complying with the provisions of this article, or to resist, prevent, impede or interfere with the commission or any of its members or representatives in the performance of a duty under this article; or
> (C) Engage in any form of reprisal or otherwise discriminate against any person because he or she has opposed any practices or acts forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

Based on this code section, this Court has held:

> A cause of action may be maintained by a plaintiff employee as against another employee under the West

> Virginia Human Rights Act. Further, the cause of action may properly be based upon an allegation that the defendant employee aided or abetted an employer engaging in unlawful discriminatory practices.

Syl. pt. 4, *Holstein v. Norandex, Inc.*, 194 W. Va. 727, 461 S.E.2d 473 (1995). We have further held based on this code section that "W. Va. Code 5-11-9(7)(C) (1992), prohibits an employer or other person from retaliating against any individual for expressing opposition to a practice that he or she reasonably and in good faith believes violates the provisions of the West Virginia Human Rights Act." Syl. pt. 11, *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995).

Our law is clear that it is a substantial public policy of this State that employees are treated equally regardless of race. Toward that end, our law prohibits an employer from retaliating against an employee for filing a racial discrimination claim against the employer. Our law also prohibits an employer from discriminating against an employee for opposing any practices forbidden by the Human Rights Act. These laws are clear and they provide specific guidance to a reasonable person. Therefore, this Court now holds that it is a violation of the substantial public policy of this State for an employer to discriminate against an employee for refusing to retaliate against another employee who has filed a racial discrimination claim against the employer. Having so held, we next address the issue whether the petitioner has stated in his complaint sufficient facts to support such a claim.

11

## 2. *Sufficiency of Petitioner's Complaint*

The principles governing the sufficiency of a complaint in this State have been stated as follows:

> The Supreme Court stated in *Dimon v. Mansy* that "the singular purpose of a Rule 12(b)(6) motion is to seek a determination whether the plaintiff is entitled to offer evidence to support the claims made in the complaint. All that is required to state a cause of action is a short and plain statement of a claim that will give the defendant fair notice of what plaintiff's claim is and the grounds upon which it rests. The Supreme Court has recognized that a motion under Rule 12(b)(6) should be viewed with disfavor and rarely granted. If the complaint states a claim upon which relief can be granted under any legal theory, a motion under Rule 12(b)(6) must be denied. Further, the mere failure of a complaint to identify the correct statutory section for a cause of action is not fatal, so long as the complaint pleads facts that state a cause of action under the correct section of a statute. However, "if a plaintiff does not plead all of the essential elements of his or her legal claim, a [trial] court is required to dismiss the complaint pursuant to Rule 12(b)(6).

> A trial court should not dismiss a complaint merely because it doubts that the plaintiff will prevail in the action, because this is neither the purpose nor function of Rule 12(b)(6). If the complaint alleges sufficient facts, it must survive a Rule 12(b)(6) motion to dismiss even if it appears that recovery is very remote and unlikely. . . . On a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff. However, a trial court is free to ignore legal conclusions, unsupported conclusions, unwarranted references and sweeping legal conclusions cast in the form of factual allegations.

> Although a plaintiff's burden in resisting a motion to dismiss is a relatively light one, the plaintiff is still required at a minimum to set forth sufficient information to outline the elements of his/her claim. If plaintiff fails to do so, dismissal is proper. . . .

> Whether a complaint states a claim upon which relief may be granted is to be determined solely from the provisions of such complaint. Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b)(6). . . .
>
> It has been held that a plaintiff who initially pleads a legal theory that is unsustainable on the facts contained in the complaint may later survive dismissal by suggesting, in response to a motion under Rule 12(b)(6), a theory that would give rise to relief on facts not inconsistent with those in the complaint. Additionally, it has been said that a plaintiff may even be able to revive a claim dismissed under Rule 12(b)(6), by asserting on appeal new facts and theories that are consistent with the original complaint.

Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 12(b)(6)[2], at 384 –88 (4th ed. 2012) (footnotes omitted). Finally, this Court has held:

> The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45 – 46 (1957).

Syl. pt. 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).

In his complaint, the petitioner alleges that Officer Ivy instituted a civil action against the City and Mayor Higgins alleging racial discrimination with regard to Officer Ivy's employment as a city police officer. The petitioner further alleges that Mayor Higgins directed the petitioner to place a GPS device in Officer Ivy's police car to track his whereabouts in retaliation against Officer Ivy for filing his racial discrimination

13

lawsuit against the City. In addition, the petitioner alleges that he refused to follow Mayor Higgins' directive regarding placing the GPS device in Officer Ivy's police car and, as a result, Mayor Higgins terminated his employment as a police officer with the City. Finally, the petitioner contends in his complaint that his termination was in contravention of *Harless* because the motive for his termination was to retaliate against him "for refusing to retaliate against or otherwise harass and intimidate individuals for purposes unrelated to the prevention of crime."[6]

In construing the petitioner's complaint in the light most favorable to the petitioner, we find that the complaint has stated a cause of action for wrongful discharge for refusing to retaliate against Officer Ivy because Officer Ivy filed a race-based discrimination claim against the respondents. We believe that the petitioner's complaint gives the respondents fair notice of the petitioner's claim and the grounds upon which it rests. Finally, we conclude that if the petitioner can prove the facts alleged in his complaint, he is entitled to relief.

### 3. Applicability of Qualified Immunity

In his final assignment of error, the petitioner opines that the circuit court erred in finding that the respondents are entitled to qualified immunity. According to the

---

[6] The fact that the petitioner did not cite the correct code section in support of his claim is not fatal. As was stated in the *Litigation Handbook on West Virginia Rules of Civil Procedure*, *infra*, if the complaint states a claim upon which relief can be granted under any legal theory, a motion under Rule 12(b)(6) must be denied.

petitioner, qualified immunity does not shield public officials who engage in illegal activity. The petitioner explains that he alleges in his complaint that he was terminated for refusing to retaliate against a police officer who had sued the City for racial discrimination. The petitioner concludes that such discrimination is illegal and is not covered by qualified immunity.

According to the respondents, the circuit court properly found that qualified immunity protects them from the petitioner's suit. The respondents explain that the only illegal order alleged in the petitioner's complaint is the order to place a GPS device on Officer Ivy's police car to track his whereabouts. The respondents assert that there is no law against a city placing a GPS device on a city-owned police car. Therefore, the petitioner fails to allege that the respondents breached a specific law or acted maliciously or in bad faith. As a result, the respondents argue that they are entitled to qualified immunity.

This Court finds that the circuit court erred in ruling that the respondents are protected from the petitioner's suit by qualified immunity. Under our law,

> [a] public executive official who is acting within the scope of his authority and is not covered by the provisions of W. Va. Code, 29-12A-1, *et seq.*, is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known. There is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive.

15

Syl., in part, *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992).

In applying our holding in *Chase* to the instant facts, we first must determine whether the respondents are covered by the provisions of The Governmental Tort Claims and Insurance Reform Act (hereinafter "Tort Claims Act"), W. Va. Code § 29-12A-1 *et seq.* Regarding whether the City of Montgomery is covered under the Act, W. Va. Code § 29-12A-18 (1986) provides that

> [t]his article does not apply to, and shall not be construed to apply to, the following . . . (b) Civil actions by an employee . . . against his or her political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision[.]

The petitioner's civil action against the City of Montgomery, which is a political subdivision under the Tort Claims Act,[7] alleges wrongful discharge of the petitioner as an employee of the City and thus arises out of the employment relationship between the petitioner and the City. Therefore, the City is not covered by the Tort Claims Act under the facts of this case.

With regard to whether Mayor Higgins is covered by the provisions of the Tort Claims Act, W. Va. Code § 29-12A-5(b) (1986) states that "[a]n employee of a political subdivision is immune from liability unless one of the following applies . . . (3) Liability is expressly imposed upon the employee by a provision of this code." As set

---

[7] W. Va. Code § 29-12A-3(c) (1986) defines "political subdivision" as "any . . . municipality."

16

forth above, W. Va. Code § 5-11-9(7)(C) provides that it is an unlawful discriminatory practice "[f]or any person" to discriminate against an employee for opposing conduct that is forbidden by the Human Rights Act. In regard to this code section, this Court held in syllabus point 3 of *Holstein v. Norandex*, 194 W. Va. 727, 461 S.E.2d 473 (1995), that

> [t]he term "person," as defined and utilized within the context of the West Virginia Human Rights Act, includes both employees and employers. Any contrary interpretation, which might have the effect of barring suits by employees against their supervisors, would be counter to the plain meaning of the statutory language and contrary to the very spirit and purpose of this particular legislation.

The petitioner alleges in his complaint that Mayor Higgins discharged him for refusing to retaliate against Officer Ivy for filing a racial discrimination lawsuit against the City, conduct for which liability is expressly imposed upon an employee by W. Va. Code § 5-11-9(7)(C). Therefore, because liability is expressly imposed on Mayor Higgins by W. Va. Code § 5-11-9(7), he is not immune from liability under the Tort Claims Act.

Having found that the respondents are not covered by the provisions of the Tort Claims Act, we next must determine whether the conduct alleged by the petitioner violated clearly established laws of which a reasonable official would have known. The petitioner alleges in his complaint that Mayor Higgins discharged him for refusing to retaliate against Officer Ivy for filing a racial discrimination lawsuit against the City.[8] As

_____

[8] In its analysis below, the circuit court erred in focusing on whether placing a GPS device in a city-owned police car violated a clearly established law of which a reasonable official would have known. The petitioner's primary allegation involves the Mayor's

17

set forth above, the Human Rights Act at W. Va. Code § 5-11-9(7)(C), prohibits such conduct. In addition, we find that this provision is clearly established in that it has been part of the Human Rights Act since 1973. *See Chapter 25 of the Acts of the Legislature, First Extraordinary Session, 1973.* Further, we previously have recognized that "[t]he employer is bound, at a minimum, to know the fundamental public policies of the state and nation as expressed in their . . . statutes[.]" *Birthisel*, 188 W. Va. at 377, 424 S.E.2d at 612 (citation omitted). Therefore, we conclude that a reasonable official of a West Virginia city, such as Mayor Higgins, would know the provisions of the Human Rights Act.

Finally, under our law, there is no qualified immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive. In his complaint, the petitioner alleges that Mayor Higgins' acts were "willful, reckless, malicious, and/or taken with reckless disregard for" the petitioner's rights. By alleging that Mayor Higgins discharged him for refusing to retaliate against Officer Ivy for filing a racial discrimination lawsuit against the City, the petitioner has alleged facts sufficient to support his allegation that Mayor Higgins' conduct was malicious. Therefore, we find that the respondents are not entitled to qualified immunity from the facts alleged by the petitioner in his complaint.

---

allegedly wrongful motivation for placing the device in Officer Ivy's police car, not the conduct itself.

## IV. CONCLUSION

For the reasons set forth above, this Court concludes that the circuit court properly ruled that the petitioner was not entitled to a pre-termination hearing, and we affirm the circuit court on that issue. In addition, we find that the petitioner's complaint alleges sufficient facts to support a claim for wrongful discharge in violation of a substantial public policy pursuant to *Harless v. First National Bank*, and that the respondents are not entitled to qualified immunity from the petitioner's cause of action for wrongful discharge. Therefore, we reverse the circuit court's ruling on that issue. Accordingly, the November 16, 2012, order of the Circuit Court of Fayette County that dismissed the petitioner's complaint under Rule of 12(b)(6) of the West Virginia Rules of Civil Procedure is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.