*State of West Virginia v. Tina Frymyer*, No. 23-513

**FILED**

**May 15, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

TRUMP, Justice, dissenting, and joined by Justice Titus:

The majority opinion has concluded that the circuit court "abused its discretion when it refused to allow the petitioner to question Juror Collins during the post-trial hearing." Maj. Op. at 10. Given the petitioner's counsel's failure to exercise reasonable diligence during voir dire, I believe that the circuit court was well within its discretion for its ruling. Accordingly, I respectfully dissent.

During voir dire,[1] the State read off its list of witnesses, which included West Virginia State Trooper R.P. Smith, Brandy Sims, and Jennifer Godfrey. The circuit court asked the venire, "[a]re any of you related by blood or connected by marriage to any of these witnesses?" to which all the venire responded in the negative. The circuit court then asked the venire panel if they were, "[c]lose personal friends with any of those witnesses?" to which the venire responded in the negative. The circuit court also asked the venire, "[a]re any of you employed as any law enforcement officer, or any members of your immediate family, or have you been in the past?" The venire responded in the negative. After the court finished asking its questions of the panel, the court gave the petitioner's counsel the opportunity to ask additional questions. The petitioner's counsel did ask some additional questions, but none which might have elicited affirmative responses from Juror Collins on

---

[1]Although not reflected in the appendix record, the petitioner's counsel explained at oral argument before this Court that the parties and the circuit court agreed on the voir dire questions that the circuit court would ask.

1

the subjects upon which the petitioner based her motion for a post-verdict examination of Juror Collins.

The questions that were asked by the court were more narrowly drawn than the petitioner now wishes that they had been, and they involved some degree of subjectivity and interpretation. For instance, the question as to whether any member of the panel is a "close personal friend" of any of the named witnesses invokes the subjective judgment and feelings of the members of the panel. What constitutes a "close personal friend" was left to the determination of each venireperson.

Likewise, the court inquired of the venire if " . . . any members of your immediate family [are employed as any law enforcement officer?]" Any person responding to such an inquiry would have to decide first what is meant by his or her "immediate family." The petitioner assails Juror Collins for giving a negative response to this question apparently because she had an adult sister (one with whom the record does not suggest that she lives) who is married to a State police officer. Is that her immediate family? I would say not, but this illustrates the problem with asking a question the answer to which depends on the juror's view as to what constitutes her "immediate family." The petitioner's counsel could have asked "Is any member of the panel related by blood or marriage to anyone who is a law enforcement officer?" A question framed in that manner would have required Juror Collins to make an affirmative response, but the petitioner's counsel did not even ask that as a follow-up question, nor did he ask the court to word its original question in that manner.

2

The petitioner's counsel never asked any questions of Juror Collins as to her understanding of the terms "close personal friends" or "immediate family." Juror Collins's negative responses cannot be characterized as dishonest or misconduct. *See Jones v. State*, 753 So. 2d 1174, 1201–02 (Ala. Ct. Crim. App. 1999) ("As asked, the question left room for subjective interpretations by the veniremembers. Therefore, we do not find that Juror J.M.'s failure to respond to this question constitutes juror misconduct."). As such, the petitioner has simply failed in the very first instance to demonstrate that Juror Collins was mendacious. This should end this matter.

Nevertheless, the majority concludes that "[w]hile the trial witnesses' [post-verdict hearing] testimony did not conclusively prove that Juror Collins was untruthful, it clearly warranted further inquiry into Juror Collins's responses during voir dire, requiring her testimony during the post-trial hearing." Maj. Op. at 11. I disagree and believe that the appropriate time to have asked specific questions about Juror Collins's relationships or her understandings of the voir dire questions asked by the circuit court was not in an intrusive

and accusatory post-verdict proceeding, but during voir dire itself.[2] That was the

petitioner's counsel's duty, and counsel failed in that regard.[3]


"We held in *West Virginia Human Rights Comm'n v. Tenpin Lounge, Inc.*,

158 W.Va. 349, 357, 211 S.E.2d 349, 354 (1975), that a party must be diligent in his or her

efforts to ascertain juror disqualification." *State v. Swims*, 212 W. Va. 263, 268, 569 S.E.2d

784, 789 (2002). The majority opinion here "find[s] no basis to conclude that the petitioner

failed to exercise reasonable diligence." Maj. Op. at 15. I am at a loss to understand how

the majority opinion can make this statement based on this record. "[T]his is not a case in

which '[t]he appellant asked the necessary questions on *voir dire* and could do no more.'"

*Belcher v. Dynamic Energy, Inc.*, 240 W. Va. 391, 401, 813 S.E.2d 44, 54 (2018) (quoting

---

[2]Federal courts have recognized that "[p]ost-trial jury scrutiny is disfavored[.]" *United States v. Stewart*, 433 F.3d 273, 302 (2d Cir. 2006). *See, e.g., United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989) (quoting *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)) ("We are always reluctant to 'haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences.'"); *accord United States v. Gilsenan*, 949 F.2d 90, 97 (3d Cir. 1991); *United States v. Cornelius*, 696 F.3d 1307, 1324 (10th Cir. 2012). As the Second Circuit Court of Appeals has identified:

> post-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts.

*Ianniello*, 866 F.2d at 543 (citations omitted).

[3]Moreover, the petitioner's counsel had every opportunity to conduct a pretrial investigation of the potential jurors in this case that would have prepared him to conduct voir dire. He apparently did not do so, only conducting a post-verdict investigation.

*Tenpin Lounge, Inc.*, 158 W. Va. at 357, 211 S.E.2d at 354). Rather, in this case, the petitioner's counsel did not ask any pertinent clarifying questions, nor did he request the circuit court to ask such questions.

"[U]nder the ordinary diligence standard, it is not enough to show that the circuit court failed to ask the questions which likely would have revealed the disqualification. A party must ensure that the trial court examines the jury panel concerning a possible disqualification, or the party itself must ask the relevant questions." *Proudfoot v. Dan's Marine Serv., Inc.*, 210 W. Va. 498, 504, 558 S.E.2d 298, 304 (2001). "If [the petitioner] . . . was unwilling to rely on the jurors' honest judgments about who was 'close' to them, he could have addressed those concerns with the Court before or during voir dire. He did not." *United States v. Lazzaro*, No. 21-CR-0173(1) (PJS/DTS), 2023 WL 5703193, at *2 (D. Minn. Sept. 5, 2023), *aff'd*, 129 F.4th 514 (8th Cir. 2025). Moreover, the petitioner's counsel also could have inquired directly of Juror Collins during voir dire concerning her understanding of "close personal friend" and "immediate family"—but he did not. *See, e.g,*, *Webb v. State*, 232 S.W.3d 109, 113 (Tex. Crim. App. 2007) ("It is counsel's responsibility to ask questions specific enough to elicit the answers they require."); *State v. Sidders*, No. 68,852, 1993 WL 13966003, at *2 (Kan. Ct. App. Aug. 6, 1993) (per curiam) ("In our judgment, defense counsel has an obligation to ask questions on voir dire reasonably calculated to bring out information which might be said to indicate a juror's inability to be impartial. Unless defense counsel asks such questions, it cannot be said that a juror failed to disclose information so as to constitute misconduct which would

5

warrant a reversal of a conviction."). A potential juror is not obligated to answer an unasked question. *See State v. Brown*, 939 S.W.2d 882, 884 (Mo. 1997) ("A venireperson cannot be found to have intentionally concealed an answer to a question that was never asked.").

The majority opinion excuses the petitioner's counsel's neglect during voir dire and gives the petitioner a second bite at the voir dire apple—a voir dire following the verdict. I cannot acquiesce in such a legally unjustifiable outcome.

Because the petitioner should not be allowed to conduct a post-verdict fishing expedition justified by his omissions during voir dire, I respectfully dissent from the majority's opinion. I would affirm the jury's verdict and the petitioner's conviction. I am authorized to state that Justice Titus joins me in this dissenting opinion.