# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2018 Term**

**No. 17-0168**

**FILED**

**April 5, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**CLIFFORD BELCHER AND RACHEL BELCHER,
INDIVIDUALLY AND AS NEXT FRIENDS
OR PARENTS OF MINOR J.A.B.,
ET AL.,
Plaintiffs Below, Petitioners,**

**V.**

**DYNAMIC ENERGY, INC.,
AND
MECHEL BLUESTONE, INC.,
Defendants Below, Respondents.**

---

**Appeal from the Circuit Court of Wyoming County
Honorable Warren R. McGraw, Chief Judge
Civil Action No. 14-C-67
Consolidated with Civil Action Nos. 14-C-68,
14-C-69, 14-C-70, 14-C-71, 14-C-72, 14-C-73,
14-C-74, 14-C-75, 14-C-100, 14-C-101, 14-C-102,
14-C-103, 14-C-104, 14-C-105, and 14-C-174**

**AFFIRMED**

---

**AND**

**No. 17-0169**

---

**DYNAMIC ENERGY, INC.,**

**AND**
**MECHEL BLUESTONE, INC.,**
**Defendants Below, Petitioners,**

**V.**

**CLIFFORD BELCHER AND RACHEL BELCHER,**
**INDIVIDUALLY AND AS NEXT FRIENDS**
**OR PARENTS OF MINOR J.A.B.,**
**ET AL.,**
**Plaintiffs Below, Respondents.**

---

**Appeal from the Circuit Court of Wyoming County**
**Honorable Warren R. McGraw, Chief Judge**
**Civil Action No. 14-C-67**
**Consolidated with Civil Action Nos. 14-C-68,**
**14-C-69, 14-C-70, 14-C-71, 14-C-72, 14-C-73,**
**14-C-74, 14-C-75, 14-C-100, 14-C-101, 14-C-102,**
**14-C-103, 14-C-104, 14-C-105, and 14-C-174**

**REVERSED AND REMANDED**

---

**Submitted: January 24, 2018**
**Filed: April 5, 2018**

Kevin W. Thompson                   James M. Brown
David R. Barney, Jr.                Pullin, Fowler, Flanagan, Brown & Poe, PLLC
Thompson Barney                     Beckley, West Virginia
Charleston, West Virginia           Billy R. Shelton
Attorneys for the Plaintiffs        Jones, Walters, Turner & Shelton
                                    Lexington, Kentucky
                                    Attorneys for the Defendants

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "This Court reviews the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review."  Syllabus point 1, *Burke-Parsons-Bowlby Corp. v. Rice*, 230 W. Va. 105, 736 S.E.2d 338 (2012), *superseded by statute on other grounds as stated in Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017).

2.      "Where a [party] moves to exclude members of the public from observing his jury trial, the ultimate question is whether, if the trial is left open, there is a clear likelihood that there will be irreparable damage to the [party's] right to a fair trial." Syllabus point 7, *State v. Richey*, 171 W. Va. 342, 298 S.E.2d 879 (1982).

3.      "In a . . . trial, where a non-party witness . . . fails to testify, a party is not entitled to an instruction allowing the jury to infer that the testimony would be favorable or unfavorable to either [party]." Syllabus point 3, in part, *State v. Herbert*, 234 W. Va. 576, 767 S.E.2d 471 (2014).

i

4.     "The official purposes of *voir dire* [are] to elicit information which will establish a basis for challenges for cause and to acquire information that will afford the parties an intelligent exercise of peremptory challenges." Syllabus point 2, in part, *Michael ex rel. Estate of Michael v. Sabado*, 192 W. Va. 585, 453 S.E.2d 419 (1994).

5.     "'A motion to set aside a verdict and grant a new trial on the ground that a juror subject to challenge for cause was a member of the jury which returned it, must be supported by proof that the juror was disqualified, that movant was diligent in his efforts to ascertain the disqualification and that prejudice or injustice resulted from the fact that said juror participated in finding and returning the verdict. Such facts must be established by proof submitted to the court in support of the motion, and not from evidence adduced before the jury upon the trial.' Syl., *Watkins v. The Baltimore and Ohio Railroad Company et al.*, 130 W. Va. 268[, 43 S.E.2d 219 (1947), *overruled on other grounds by* Syl. pt. 3, *Proudfoot v. Dan's Marine Service, Inc.*, 210 W. Va. 498, 558 S.E.2d 298 (2001)]." Syllabus point 2, *State v. Dean*, 134 W. Va. 257, 58 S.E.2d 860 (1950).

6.     "'Where there is a recognized statutory or common law basis for disqualification of a juror, a party must during voir dire avail himself of the opportunity to ask such disqualifying questions. Otherwise the party may be deemed not to have exercised reasonable diligence to ascertain the disqualification.' Syl. Pt. 8, *State v. Bongalis*, 180

W. Va. 584, 378 S.E.2d 449 (1989)." Syllabus point 8, *Arnoldt v. Ashland Oil, Inc.*, 186 W. Va. 394, 412 S.E.2d 795 (1991).

7.    "'It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed.' Syl. pt. 2, *Skeen v. C and G Corp.*, 155 W. Va. 547, 185 S.E.2d 493 (1971)." Syllabus point 3, *Harnish v. Corra*, 237 W. Va. 609, 788 S.E.2d 750 (2016).

8.    "An appellate court will not set aside the verdict of a jury, founded on conflicting testimony and approved by the trial court, unless the verdict is against the plain preponderance of the evidence." Syllabus point 2, *Stephens v. Bartlett*, 118 W. Va. 421, 191 S.E. 550 (1937).

9.    "'In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.' Syl. pt. 3, *Walker v. Monongahela Power Co.*, 147 W. Va. 825, 131 S.E.2d 736 (1963)." Syllabus point 4, *Harnish v. Corra*, 237 W. Va. 609, 788 S.E.2d 750 (2016).

10. "Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse to modify, continue, or dissolve a temporary or a permanent injunction, whether preventative or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion." Syllabus Point 11, *Stuart v. Lake Washington Realty Corp.*, 141 W. Va. 627, 92 S.E.2d 891 (1956).

11. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

12. "Where the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein." Syllabus point 1, *Dunlap v. State Compensation Director*, 149 W. Va. 266, 140 S.E.2d 448 (1965).

13. Pursuant to W. Va. Code § 22-3-24(h) (2006) (Repl. Vol. 2014), an operator's obligation to provide replacement water service in accordance with W. Va. Code

§§ 22-3-24(b) and (d) ends when the West Virginia Department of Environmental Protection authorizes the discontinuation thereof.

**Davis, Justice:**

The cases *sub judice*, which involve the same parties, have been consolidated by the Court for consideration and decision. In Docket Number 17-0168, the petitioners herein and plaintiffs below, Clifford Belcher, Rachel Belcher, individually and as next friends or parents of Minor J.A.B., *et al.* (collectively, "the Plaintiffs"), appeal from an order entered January 20, 2017, by the Circuit Court of Wyoming County. By that order, the court refused the Plaintiffs' motion to set aside jury verdicts and for a new trial and upheld jury verdicts rendered in favor of the respondents herein and defendants below, Dynamic Energy, Inc., and Mechel Bluestone, Inc. (collectively, "Dynamic Energy"). On appeal to this Court, the Plaintiffs raise the following assignments of error: (1) jury interference and witness intimidation; (2) disqualifying relationship between seated alternate juror and corporate representative of defendant coal company; and (3) defense verdicts against the weight of the evidence. Upon a review of the parties' arguments, the record designated for appellate consideration, and the pertinent authorities, we find no error and, therefore, affirm the circuit court's ruling.

In Docket Number 17-0169, Dynamic Energy appeals from a different order entered January 20, 2017, by the Circuit Court of Wyoming County. By that order, the circuit court refused to dissolve a preliminary injunction that requires Dynamic Energy to provide replacement water to the Plaintiffs pursuant to W. Va. Code § 22-3-24 (2006) (Repl. Vol.

1

2014).  On appeal to this Court, Dynamic Energy contends that the circuit court erred because the preliminary injunction should have been dissolved.  Upon a review of the parties' arguments, the record designated for appellate consideration, and the pertinent authorities, we agree that the subject preliminary injunction should have been dissolved.  Accordingly, we reverse the circuit court's ruling.  However, during oral argument of these matters, the parties informed the Court that Dynamic Energy, of its own volition, stopped providing the replacement water required by the preliminary injunction in direct violation of the circuit court's commands.  Therefore, we remand this case to the circuit court for the parties to raise the issue of Dynamic Energy's noncompliance with the circuit court's preliminary injunction during the pendency of the instant appeal.

# I.

## FACTUAL AND PROCEDURAL HISTORY

The following is a brief summary of the facts giving rise to the underlying litigation and the circuit court's rulings from which the parties have appealed to this Court. Additional facts will be set forth in relation to the parties' arguments in Section III of the opinion, *infra*.

In May 2014, multiple individual plaintiffs filed suit against the defendant coal companies, *i.e.*, Dynamic Energy, Inc., and Mechel Bluestone, Inc. ("Dynamic Energy"),

2

alleging that the defendants' mining activities had contaminated the plaintiffs' well water when they discovered the presence of lead and arsenic in their water. These sixteen individual suits eventually were consolidated into the litigation filed by the Belcher plaintiffs ("the Plaintiffs"). The Plaintiffs asserted claims against Dynamic Energy for property damage; private and public nuisance; trespass; negligent infliction of emotional distress; negligence; violations of the West Virginia Surface Coal Mining and Reclamation Act, W. Va. § 22-3-1 *et seq*.; and punitive damages. A jury trial eventually was held in the Circuit Court of Wyoming County during April and May 2016, and the jury returned verdicts for Dynamic Energy on May 5, 2016. The Plaintiffs filed a motion to set aside the verdicts and for a new trial, which the circuit court refused by order entered January 20, 2017. From this adverse ruling, the Plaintiffs appeal to this Court in Docket Number 17-0168.

During the course of the underlying litigation, the Plaintiffs invoked the water replacement provisions of the West Virginia Surface Coal Mining and Reclamation Act, W. Va. Code § 22-3-1 *et seq.* By order entered December 2, 2014, the circuit court granted the requested relief and issued a preliminary injunction requiring Dynamic Energy to provide replacement water until liability for the well water contamination had been established. Following the jury's defense verdicts, Dynamic Energy asked the circuit court to dissolve the injunction. By order entered January 20, 2017, the circuit court refused to dissolve the

3

injection while the matter was pending on appeal. From this adverse ruling, Dynamic Energy appeals to this Court in Docket Number 17-0169.

## II.

## STANDARD OF REVIEW

Given the numerous errors assigned by the parties and the different standards of review applicable thereto, we will set forth the governing standards of review in our discussion of each of the appeals consolidated for consideration and decision herein.

## III.

## DISCUSSION

The two appeals at issue herein pertain to orders of the circuit court that address different portions of the proceedings below. Docket Number 17-0168 concerns the Plaintiffs' appeal from the circuit court's order upholding the jury's verdict in the case, while Docket Number 17-0169 relates to Dynamic Energy's appeal from the circuit court's order refusing to dissolve the preliminary injunction, which the court issued before the underlying trial, following the jury's verdicts in favor of Dynamic Energy. We will address each appeal in turn.

4

### A. *Docket Number 17-0168 - Plaintiffs' Appeal*

In Docket Number 17-0168, the Plaintiffs appeal from the circuit court's order denying their motion to set aside verdicts and for a new trial. On appeal to this Court, the Plaintiffs raise assignments of error alleging (1) jury interference and witness intimidation; (2) disqualifying relationship between seated alternate juror and corporate representative of defendant coal company; and (3) defense verdicts against the weight of the evidence.

**1. Standard of review.** The circuit court rendered its January 20, 2017, order denying the Plaintiffs' motion to set aside verdicts and for a new trial following the Plaintiffs' Rule 59 motion requesting such relief. Pursuant to Rule 59(a)(1) of the West Virginia Rules of Civil Procedure,

> [a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law[.]

*Accord Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 106, 459 S.E.2d 374, 383 (1995) ("Pursuant to Rule 59 of the West Virginia Rules of Civil Procedure, a circuit judge may grant a new trial 'for any of the reasons for which new trials have heretofore been granted in actions at law.'").

With respect to this Court's review of a circuit court's order regarding a motion for a new trial, we have held that

[t]his Court reviews the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 1, *Burke-Parsons-Bowlby Corp. v. Rice*, 230 W. Va. 105, 736 S.E.2d 338 (2012), *superseded by statute on other grounds as stated in Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017). *Accord Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. at 104, 459 S.E.2d at 381 ("As a general proposition, we review a circuit court's ruling on a motion for a new trial under an abuse of discretion standard. . . . We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." (internal citation omitted)). Moreover,

[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syl. pt. 4, *Sanders v. Georgia-Pacific Corp.*, 159 W. Va. 621, 225 S.E.2d 218 (1976). Finally, we have recognized that

[t]he lower court must always temper the decision whether to grant a new trial because of trial error by considering the importance to the litigants of receiving a fair and final judgment with society's interest, as expressed through our Legislature, that

6

> unless error affected the outcome of the trial, a new trial should not usually be granted.

*Tennant*, 194 W. Va. at 106, 459 S.E.2d at 383.  These standards will guide our review of the errors asserted by the Plaintiffs.

**2.  Improper presence of union members in courtroom and at trial.**  The Plaintiffs first contend that the circuit court erred by not finding the presence of union members in the courtroom and at trial to be improper insofar as they claim that such union members improperly interfered with the jury and intimidated a witness for the Plaintiffs.

**a.  Jury interference.**  The Plaintiffs argue that the circuit court erred by refusing to declare a mistrial when numerous individuals wearing clothing identifying them as members of the United Mine Workers of America ("UMWA" or "union members") sat in the courtroom during the first day of trial and appeared at the courthouse during the remainder of the trial, allegedly discussing the evidence as the jurors walked past them.  In this regard, the Plaintiffs contend that the presence of so many identifiable union members, who presumably supported Dynamic Energy, improperly interfered with their right to have a trial free from a coercive or intimidating atmosphere.  By contrast, Dynamic Energy argues that it did not procure or request the UMWA members' presence in the courtroom or at the courthouse and it did not impede the Plaintiffs' right to a fair trial.

7

We find the Plaintiffs' argument to be without merit because the cases they rely upon in support of their position on this issue do not support their request for relief. In *State v. Richey*, 171 W. Va. 342, 298 S.E.2d 879 (1982), the Court determined that the attendance of high school students at a trial during the adolescent victim's testimony did not infringe the defendant's right to a fair trial and that such members of the public were permitted to attend the open public trial. The Court held that the appropriate standard to apply to determine whether courtroom spectators should be excluded from proceedings requires the following examination to be conducted: "Where a [party] moves to exclude members of the public from observing his jury trial, the ultimate question is whether, if the trial is left open, there is a clear likelihood that there will be irreparable damage to the [party's] right to a fair trial." Syl. pt. 7, *Richey*, *id.* Applying this holding to the facts of the case before it, the Court found no reversible error by allowing the subject spectators to remain in the courtroom, observing that "[w]e must assume that a jury has the fortitude to withstand this type of public scrutiny, and cannot presume irreparable harm to the [party's] right to a fair jury trial by the presence of spectators who may have some type of associational identity with the [opposing party]." *Richey*, 171 W. Va. at 352, 298 S.E.2d at 889.

While the Court in *State v. Franklin*, 174 W. Va. 469, 327 S.E.2d 449 (1985), did find the presence of spectators wearing yellow Mothers Against Drunk Drivers ("MADD") buttons to have improperly influenced the jury in a defendant's trial for driving

8

under the influence of alcohol resulting in death, *Franklin* is distinguishable insofar as the sheriff, who also was the president of the local MADD chapter, was observed handing out these buttons to a potential juror and other spectators. It is clear that the Court's decision in *Franklin* was distinguished from our prior opinion in *Richey* based upon the sheriff's involvement, as an officer of the court, in improperly influencing the jury by encouraging and supporting the MADD spectators. Specifically, we recognized that "the *Richey* holding is inapplicable to the facts here. In this case the spectators were clearly distinguishable from other visitors in the courtroom *and, led by the sheriff,* they constituted a formidable, albeit passive, influence on the jury." *Franklin*, 174 W. Va. at 475, 327 S.E.2d at 455 (emphasis added).

Applying these decisions to the facts of the case *sub judice*, we find that there is no evidence that Dynamic Energy solicited or otherwise requested the UMWA members to attend the trial or that any court officers supported or encouraged their presence. Neither do we find the presence of spectators supporting the defendants at trial to be any more damaging to the parties' right to a fair trial than the presence of spectators supporting the Plaintiffs. *See* Syl. pt. 7, *Richey*, 171 W. Va. 342, 298 S.E.2d 879. Moreover, limiting access to judicial proceedings to finite groups of spectators could have a chilling effect and preclude family members and other supporters of the parties involved in the litigation from attending judicial proceedings. *See generally* Syl. pt. 1, in part, *State ex rel. Herald Mail Co.*

9

*v. Hamilton*, 165 W. Va. 103, 267 S.E.2d 544 (1980) (observing that "Article III, Section 14 of the West Virginia Constitution, when read in light of our open courts provision in Article III, Section 17, provides a clear basis for finding an independent right in the public . . . to attend [courtroom] proceedings."). Therefore, we conclude that the circuit court's ruling on this issue should be affirmed.

**b. Witness intimidation.** The Plaintiffs next contend that the UMWA spectators improperly intimidated a potential witness for the Plaintiffs and allegedly caused him to change his testimony such that the Plaintiffs opted not to call him to testify during trial. Eric Scott Sowards ("Mr. Sowards"), a former employee of Dynamic Energy who was laid off from work in 2013, allegedly told one of the parties plaintiff that, while he was employed by Dynamic Energy, he had illegally buried slurry outside of the areas designated by its mining permits. The Plaintiffs apparently believe that this illegally buried slurry caused or contributed to their well water contamination and intended to call Mr. Sowards to reiterate this account at trial.

In support of this assignment of error, the Plaintiffs claim that, when Mr. Sowards appeared at the courthouse to testify, he was immediately surrounded by UMWA members, who allegedly either discussed his testimony in an agitated manner or told him to tell the truth when he expressed nervousness about testifying. In any event, Mr. Sowards

10

then purportedly denied having claimed to have illegally buried slurry while working for Dynamic Energy, and the Plaintiffs ultimately did not call him to testify at trial. The Plaintiffs allege further that Mr. Sowards continued coming to trial thereafter and congregating with the UMWA members and, additionally, that Dynamic Energy rehired him after the trial. Dynamic Energy denies any allegations of witness tampering or intimidation.

We find this assignment of error to be without merit. Because the Plaintiffs did not call Mr. Sowards to testify during trial, it is uncertain whether his purported testimony did, in fact, change or whether the presence of the UMWA members improperly influenced his testimony. In *State v. Herbert*, 234 W. Va. 576, 767 S.E.2d 471 (2014), the Court held that a witness must actually take the stand and testify in order to thereafter assign error with regard to the witness's allegedly changed testimony. Specifically, "[i]n a . . . trial, where a non-party witness . . . fails to testify, a party is not entitled to an instruction allowing the jury to infer that the testimony would be favorable or unfavorable to either [party]." Syl. pt. 3, in part, *Herbert*, *id*. *See also Guzman v. Scully*, 80 F.3d 772, 775-76 (2d Cir. 1996) (observing that, to uphold claim of witness intimidation, trial court must ask witness if he/she felt intimidated rather than relying on counsel's representations thereof). Because Mr. Sowards did not testify, there is no record of whether his testimony actually changed or whether it remained the same, and, thus, any alleged error in this regard has not been properly preserved. Accordingly, we affirm the circuit court's ruling as to this issue.

11

**3. Disqualifying relationship between seated alternate juror and corporate representative of defendant coal company.** The Plaintiffs next complain that a biased juror was allowed to remain on the jury during the trial. In this regard, the Plaintiffs contend that, during *voir dire*, alternate juror Mart Lane ("Juror Lane") did not disclose his relationship with one of the parties and, as a result, was approved and ultimately was seated as a juror in this case. After trial had begun, Juror Lane was observed speaking with Tom Lusk ("Mr. Lusk"), who was the defense corporate representative for Dynamic Energy and had served as a pastor at several funerals for Juror Lane's family. When this acquaintance was brought to the circuit court's attention, the court remarked that "Wyoming [County] is a small place, people know each other," and refused to take any further action. In response, Dynamic Energy contends that the trial court did not err in refusing to remove Juror Lane because counsel for the Plaintiffs did not ask about personal relationships with the defendants' corporate representatives during *voir dire*, but, instead, inquired only whether they, their family members, or their close friends worked for the defendants. Moreover, Dynamic Energy states that the Plaintiffs requested that Juror Lane, who was a second alternate juror, be seated instead of the first alternate juror. Finally, Dynamic Energy represents that Mr. Lusk was not Juror Lane's personal pastor and that they were merely acquaintances.

We previously have held that "[t]he official purposes of *voir dire* [are] to elicit information which will establish a basis for challenges for cause and to acquire information

that will afford the parties an intelligent exercise of peremptory challenges." Syl. pt. 2, in part, *Michael ex rel. Estate of Michael v. Sabado*, 192 W. Va. 585, 453 S.E.2d 419 (1994). *Accord* Syl. pt. 3, *Torrence v. Kusminsky*, 185 W. Va. 734, 408 S.E.2d 684 (1991). Given the importance of *voir dire*, "[i]f it be determined that a juror falsely answered a question on *voir dire* examination, whether or not a new trial should be awarded is within the sound discretion of the trial court." Syl. pt. 3, *West Virginia Human Rights Comm'n v. Tenpin Lounge, Inc.*, 158 W. Va. 349, 211 S.E.2d 349 (1975). To determine whether such juror deceit warrants a new trial, the United State Supreme Court has propounded the following test of elements that the party moving for a new trial on such grounds must satisfy. The party requesting the new trial must

> "first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial."

*Postlewait v. City of Wheeling*, 231 W. Va. 1, 7, 743 S.E.2d 309, 315 (2012) (Davis, J., dissenting) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S. Ct. 845, 850, 78 L. Ed. 2d 663 (1984)). *Cf. Tenpin Lounge*, 158 W. Va. at 357, 211 S.E.2d at 354 ("[T]o warrant a new trial on the ground that a juror subject to challenge for cause was a member of the jury which returned the verdict, the defendant had the burden of proving that (1) said juror was disqualified, (2) that defendant was diligent in his efforts to ascertain the

disqualification and (3) prejudice or injustice resulted from the juror's participation." (citing *State v. Dean*, 134 W. Va. 257, 58 S.E.2d 860 (1950))).

Nevertheless,

"[a] motion to set aside a verdict and grant a new trial on the ground that a juror subject to challenge for cause was a member of the jury which returned it, must be supported by proof that the juror was disqualified, *that movant was diligent in his efforts to ascertain the disqualification and that prejudice or injustice resulted from the fact that said juror participated in finding and returning the verdict.* Such facts must be established by proof submitted to the court in support of the motion, and not from evidence adduced before the jury upon the trial." Syl., *Watkins v. The Baltimore and Ohio Railroad Company et al.*, 130 W. Va. 268[, 43 S.E.2d 219 (1947), *overruled on other grounds by* Syl. pt. 3, *Proudfoot v. Dan's Marine Service, Inc.*, 210 W. Va. 498, 558 S.E.2d 298 (2001)].

Syl. pt. 2, *State v. Dean*, 134 W. Va. 257, 58 S.E.2d 860 (1950) (emphasis added). Thus, "a new trial will be granted only when the prospective juror's willful or inadvertent failure, during *voir dire*, to disclose relevant information suggests actual or probable bias or prejudice, not merely because the complaining party has been, in effect, denied a peremptory strike of a particular prospective juror." *McGlone v. Superior Trucking Co., Inc.*, 178 W. Va. 659, 669, 363 S.E.2d 736, 746 (1987) (citation omitted). However, "[u]pon an allegation before a trial court that a juror falsely answered a *material* question on *voir dire*, and where a request is made for a hearing to determine the truth or falsity of such allegation it is

14

reversible error for the trial court to refuse such hearing." Syl. pt. 2, *Tenpin Lounge*, 158 W. Va. 349, 211 S.E.2d 349.

Here, the Plaintiffs' complaint is not that the trial court improperly limited the scope of inquiry on *voir dire* but, rather, that Juror Lane falsely answered questions on *voir dire* designed to identify a disqualifying bias. Upon our review of the parties' arguments and the record below, however, we find that the real issue concerns not the veracity of the prospective jurors on *voir dire* but, instead, whether the Plaintiffs asked questions on *voir dire* designed to elicit information disclosing the potential juror bias of which they now complain. It is apparent from the record in this case, though, that the Plaintiffs' *voir dire* inquiry did not ask whether the prospective jurors were acquainted with the corporate representatives of Dynamic Energy or if they had any personal relationships with these individuals. Rather, the *voir dire* questions were limited to ascertaining whether the prospective jurors were employed by the defendants, whether they had any interest in the defendant companies, and whether they were biased in favor of either party. On this record, then, and coupled with the fact that the Plaintiffs' counsel urged the trial court to seat Juror Lane, who was the second alternate, as a juror in the underlying trial in lieu of the first alternate juror, we conclude that the Plaintiffs are responsible for the error of which they now complain. As to this very point, we have counseled that

> [a] party simply cannot acquiesce to, or be the source of, an
> error during proceedings before a tribunal and then complain of

15

that error at a later date. *See, e.g.*, *State v. Crabtree*, 198 W. Va. 620, 627, 482 S.E.2d 605, 612 (1996) ("Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences."); *Smith v. Bechtold*, 190 W. Va. 315, 319, 438 S.E.2d 347, 351 (1993) ("[I]t is not appropriate for an appellate body to grant relief to a party who invites error in a lower tribunal." (Citation omitted).).

*Hanlon v. Logan Cty. Bd. of Educ.*, 201 W. Va. 305, 316, 496 S.E.2d 447, 458 (1997). In the present context, we also have admonished counsel that

"[w]here there is a recognized statutory or common law basis for disqualification of a juror, a party must during voir dire avail himself of the opportunity to ask such disqualifying questions. Otherwise the party may be deemed not to have exercised reasonable diligence to ascertain the disqualification." Syl. Pt. 8, *State v. Bongalis*, 180 W. Va. 584, 378 S.E.2d 449 (1989).

Syl. pt. 8, *Arnoldt v. Ashland Oil, Inc.*, 186 W. Va. 394, 412 S.E.2d 795 (1991).

It does not appear that counsel adequately inquired about associations between potential jurors and the parties during *voir dire* to discover acquaintanceships such as the one that exists between Juror Lane and Mr. Lusk. In other words, this is not a case in which "[t]he appellant asked the necessary questions on *voir dire* and could do no more." *Tenpin Lounge*, 158 W. Va. at 357, 211 S.E.2d at 354. Rather, it is apparent that the Plaintiffs' counsel's failure to ascertain such disqualification when it had the opportunity to do so, and subsequent request to seat Juror Lane in the stead of the first alternate juror, not only have contributed to, but effectively have caused, this alleged error of which they now complain.

16

Accordingly, we conclude that the trial court did not err by refusing to remove Juror Lane from the jury panel in the trial of this case nor did it abuse its discretion by refusing to award the Plaintiffs a new trial based upon the acquaintanceship between Juror Lane and Mr. Lusk.

**4. Defense verdicts against the weight of the evidence.** The Plaintiffs finally argue that the circuit court erred by refusing their motion to set aside the jury verdicts and for a new trial. In this regard, the Plaintiffs contend that the evidence clearly showed that Dynamic Energy is liable for their well water contamination as supported by expert testimony, water sample testing, and notices of the defendants' violations of their mining permits. For their part, Dynamic Energy asserts that the expert opinion evidence presented by the Plaintiffs was not supported by concrete data to prove that they were liable for the Plaintiffs' well water contamination. Dynamic Energy further claims that its evidence showed that water from the defendants' mining operations did not contain the subject contaminants, that the Plaintiffs' well water was not pristine before the defendants began their mining activities, and that the West Virginia Department of Environmental Protection ("DEP") determined that the defendants' mining operations had not adversely affected the Plaintiffs' water wells.

Following this unfavorable jury verdict, the Plaintiffs moved the trial court to set aside the adverse verdict and for a new trial, both of which motions the trial court refused.

17

The subject verdicts were returned following the parties' presentation of their cases, including evidence in support of each of their respective positions. We previously have held that, in such circumstances,

> "[i]t is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed." Syl. pt. 2, *Skeen v. C and G Corp.*, 155 W. Va. 547, 185 S.E.2d 493 (1971).

Syl. pt. 3, *Harnish v. Corra*, 237 W. Va. 609, 788 S.E.2d 750 (2016). This Court, also, accords a deferential review to findings of fact made by a jury and upheld by the trial court: "An appellate court will not set aside the verdict of a jury, founded on conflicting testimony and approved by the trial court, unless the verdict is against the plain preponderance of the evidence." Syl. pt. 2, *Stephens v. Bartlett*, 118 W. Va. 421, 191 S.E. 550 (1937). Finally,

> "[i]n determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true." Syl. pt. 3, *Walker v. Monongahela Power Co.*, 147 W. Va. 825, 131 S.E.2d 736 (1963).

Syl. pt. 4, *Harnish*, 237 W. Va. 609, 788 S.E.2d 750. *Accord* Syl. pt. 5, *Orr v. Crowder*, 173 W. Va. 335, 315 S.E.2d 593 (1983) ("In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in

18

favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.").

Upon our review of the record in this case, we are unable to find either that a "prejudicial error has crept into the record or that substantial justice has not been done"[1] sufficient to warrant the granting of a new trial to the Plaintiffs. During the underlying trial of the case *sub judice*, the parties presented the testimony of witnesses and introduced evidence in support of their respective positions. Given the parties' divergent views of the case, so, too, the witness testimony and evidence presented varied and, at times, significantly differed and contradicted that of the opposing party. However, the jury, by its very function, was tasked with sorting out the information offered in support of each party's position, to reconcile these conflicts where possible, and to assess the credibility of the witnesses who testified. *See* Syl. pt. 3, *Harnish v. Corra*, 237 W. Va. 609, 788 S.E.2d 750. Resolution of these factual contentions to arrive at their ultimate verdict was, also, a matter reposed in the jury–and not in the trial court or in this Court. Furthermore, our consideration of the record of such proceedings suggests no errors or irregularities that would warrant invalidating the jury's verdict. Therefore, the circuit court correctly denied the Plaintiffs' motions to set aside the jury verdicts and for a new trial, and we affirm the circuit court's ruling in this regard.

[1]*In re State Pub. Bldg. Asbestos Litig.*, 193 W. Va. 119, 124, 454 S.E.2d 413, 418 (1994) (internal quotations and citations omitted).

19

### B. *Docket Number 17-0169 - Dynamic Energy's Appeal*

In Docket Number 17-0169, Dynamic Energy appeals from the circuit court's order, also entered on January 20, 2017, refusing to dissolve a preliminary injunction that requires the defendant coal companies to provide replacement water to the Plaintiffs pursuant to W. Va. Code § 22-3-24 (2006) (Repl. Vol. 2014).

**1. Standard of review.** At issue in this appeal is whether the circuit court erred by refusing to dissolve the preliminary injunction that requires Dynamic Energy to provide replacement water to the Plaintiffs pursuant to W. Va. Code § 22-3-24. We previously have held that,

> [u]nless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse to modify, continue, or dissolve a temporary or a permanent injunction, whether preventative or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion.

Syl. pt. 11, *Stuart v. Lake Washington Realty Corp.*, 141 W. Va. 627, 92 S.E.2d 891 (1956). *See also* Syl. pt. 6, *West Virginia Bd. of Dental Exam'rs v. Storch*, 146 W. Va. 662, 122 S.E.2d 295 (1961) ("The denial or granting of an injunction by a trial court is discretionary and will not be disturbed upon an appeal unless there is an absolute right for an injunction or some abuses shown in connection with the denial or granting thereof."); Syl. pt. 4, *State ex rel. Donley v. Baker*, 112 W. Va. 263, 164 S.E. 154 (1932) ("The granting or refusal of

20

an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ.").

Insofar as the subject injunction is based upon statutory authority, it also is necessary to examine the circuit court's rulings regarding this statute. In this regard, we previously have held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). *Accord* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."). In consideration of these standards, we proceed to consider the error assigned by Dynamic Energy.

**2. Refusal to dissolve preliminary injunction.** During the underlying proceedings, the circuit court issued the subject preliminary injunction, upon the Plaintiffs' request, pursuant to W. Va. Code § 22-3-24, which provides, in pertinent part:

21

(b) Any operator[2] shall replace the water supply of an owner of interest in real property who obtains all or part of the owner's supply of water for domestic, agricultural, industrial or other legitimate use from an underground or surface source where the supply has been affected by contamination, diminution or interruption proximately caused by the surface mining operation, unless waived by the owner.

. . . .

(d) The operator conducting the mining operation shall: (1) provide an emergency drinking water supply within twenty-four hours; (2) provide temporary water supply within seventy-two hours; (3) within thirty days begin activities to establish a permanent water supply or submit a proposal to the secretary outlining the measures and timetables to be utilized in establishing a permanent supply. The total time for providing a permanent water supply may not exceed two years. If the operator demonstrates that providing a permanent replacement water supply can not be completed within two years, the secretary may extend the time frame on case-by-case basis; and (4) pay all reasonable costs incurred by the owner in securing a water supply.

(Footnote added). Specifically, by order entered December 2, 2014, the circuit court ruled

as follows:

**WHEREFORE**, based upon the foregoing, the Court is of the opinion to and hereby does **GRANT** Plaintiffs' Motion for statutory injunctive relief for replacement water pursuant to the West Virginia Surface Coal Mining and Reclamation Act, West Virginia Code § 22-3-1, *et seq.* Furthermore, the Court **ORDERS** and **DIRECTS** as follows:

---

[2]The term "operator" is defined as "any person who is granted or who should obtain a permit to engage in any activity covered by this article and any rule promulgated under this article and includes any person who engages in surface mining or surface mining and reclamation operations, or both." W. Va. Code § 22-3-3(*o*) (2000) (Repl. Vol. 2014).

22

> 1.     That within twenty-four (24) hours of notice of this Order, Defendant Dynamic is to provide emergency drinking water to each Plaintiff for family and domestic use.
>
> 2.     That within seventy-two (72) hours of notice of this Order, Defendant Dynamic is to provide temporary potable water for use by Plaintiffs in their households and homesteads.
>
> 3.     That counsel for the parties are to cooperate on the details for the provision of replacement water.

The parties do not dispute the propriety of the circuit court's order granting this preliminary injunction in the first instance.

Rather, the present controversy arose when, following the jury's defense verdicts and the DEP's issuance of its letter, thereafter, finding Dynamic Energy was not liable for the Plaintiffs' water contamination, Dynamic Energy requested the circuit court to dissolve the preliminary injunction it earlier had issued before Dynamic Energy's liability had been conclusively determined. Relying on W. Va. Code § 22-3-24(h),[3] Dynamic Energy argued that, in light of the jury's defense verdicts and the DEP's determination letter, dated July 21, 2016,[4] the preliminary injunction should be dissolved. The circuit court refused, however, citing that portion of the statutory language referencing appeals and ruling that

> statutory replacement water cannot be discontinued until the legal time to file an appeal with the West Virginia Supreme

---

[3]For the text of W. Va. Code § 22-3-24(h) (2006) (Repl. Vol. 2014), see text, *infra*.

[4]See note 6, *infra*, for the text of the July 21, 2016, DEP letter.

Court of Appeals has passed. If an appeal is filed, replacement water must be provided during the course of the appeal unless terminated by the appellate court. Therefore, the Motion to Dissolve the Preliminary Injunctions is **DENIED**.

Appealing from this order to this Court, Dynamic Energy contends that the subject injunction was preliminary in nature and is no longer warranted insofar as the defense verdicts have absolved the defendants of liability for the Plaintiffs' well water contamination. *Citing Jefferson Cty. Bd. of Educ. v. Jefferson Cty. Educ. Ass'n*, 183 W. Va. 15, 24, 393 S.E.2d 653, 662 (1990) ("Under the balance of hardship test the district court must consider, in 'flexible interplay,' the following four factors in determining whether to issue a preliminary injunction: (1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest." (citations omitted)). By contrast, the Plaintiffs argue that the circuit court properly refused to dissolve the preliminary injunction pending the instant appeal insofar as the defense verdicts could be overturned on appeal. Moreover, the Plaintiffs state that the *Jefferson County* factors upon which Dynamic Energy relies to support dissolution of the injunction militate in favor of keeping the injunction in place insofar as they still have contaminated water.

Once a preliminary injunction has been issued to require the provision of replacement water in accordance with W. Va. Code §§ 22-3-24(b) and (d), the dissolution thereof is governed by W. Va. Code § 22-3-24(h). Pursuant to W. Va. Code § 22-3-24(h),

24

> [n]otwithstanding the denial of the operator of responsibility for damage of the owners' water supply or the status of any appeal on determination of liability for the damage to the owners' water supply, the operator may not discontinue providing the required water service until authorized by the division.[5]

(Footnote added). Given that this statutory authority is determinative of the parties' controversy, it is necessary to discern the meaning of this legislative enactment. We previously have held that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). In doing so, "it is essential to afford the enactment an interpretation that comports with the intent of the Legislature." *Lowe v. Richards*, 234 W. Va. 48, 55, 763 S.E.2d 64, 71 (2014). Thus, "[w]here the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein." Syl. pt. 1, *Dunlap v. State Comp. Dir.*, 149 W. Va. 266, 140 S.E.2d 448 (1965). *Accord Dan's Carworld, LLC v. Serian*, 223 W. Va. 478, 484, 677 S.E.2d 914, 920 (2009) (recognizing that when "the legislative intent is clearly expressed in the statute, this Court is not at liberty to construe the statutory provision, but is obligated to apply its plain language").

---

[5]"'Division' means the Division of Environmental Protection." W. Va. Code § 22-3-3(k). *See generally* W. Va. Code § 22-1-1(b) (2001) (Repl. Vol. 2014) (effectively changing name of agency from "Division of Environmental Protection" to "Department of Environmental Protection").

Considering the quoted statutory language in conjunction with our rules of statutory construction, we conclude that the meaning of W. Va. Code § 22-3-24(h) is plain. Accordingly, we hold that, pursuant to W. Va. Code § 22-3-24(h) (2006) (Repl. Vol. 2014), an operator's obligation to provide replacement water service in accordance with W. Va. Code §§ 22-3-24(b) and (d) ends when the West Virginia Department of Environmental Protection authorizes the discontinuation thereof.

Applying this holding to the facts of the case *sub judice*, we find that the circuit court was partially correct in ruling that an injunction requiring the provision of statutory replacement water service remains in place during the pendency of an appeal; however, the circuit court erred by failing to apply the remainder of the statutory language that instructs when such an injunction should be dissolved. In other words, pursuant to the plain language of W. Va. Code § 22-3-24(h) and our holding announced herein, when there has been a definite determination by the West Virginia Department of Environmental Protection ("DEP") relieving a party of the duty to provide statutory replacement water service, an injunction requiring the provision of the same should be dissolved. Here, the July 21, 2016, letter[6] from the DEP relieving Dynamic Energy of its obligation to provide replacement water

---

[6]The DEP's letter of July 21, 2016, relieving Dynamic Energy of its obligation to provide statutory replacement water provides, as follows:

> Please accept this electronic communication that the March 25, 2014[,] complaint from Mr. Kevin Thompson on behalf of
> (continued...)

26

service was sufficient to dissolve the subject injunction according to the plain language of W. Va. Code § 22-3-24(h). Thus, the circuit court erred by denying Dynamic Energy's motion to dissolve the preliminary injunction, and its order is therefore reversed.

Resolution of this case is not yet complete, however, because, during the oral argument of these matters, the parties informed the Court that Dynamic Energy had, of its own volition, stopped providing the replacement water service in December 2017 that it had been ordered to supply by the circuit court's preliminary injunction and to continue supplying

---

[6](...continued)
residents near the Dynamic Energy Surface Mine, permit number S-4020-96, has been investigated and the Division of Mining and Reclamation concluded that the water quality issues raised by the complaint could not be attributed to the mining activities associated with the Dynamic permit. Accordingly, in view of the West Virginia DEP Division of Mining and Reclamation there is no statutory obligation under the West Virginia Surface Coal Mining and Reclamation act for the continuance of providing drinking water to the residents involved in this case.

The water replacement obligations imposed by [§] 22-3-24(d) of the Act are only applicable when there is a presumption of causation and the inspector determines that (1) contamination, diminution or damage to an owner's underground water supply exist and (2) a pre-blast survey was performed, consistent with the provisions of [§] 22-3-13(a) of the Act on the owner's property including the underground water supply that indicated that contamination, diminution or damage did not exist prior to the mining conducted at the operation. Our investigation found that neither of these requirements could be demonstrated and therefore no obligation to replace exist[s].

27

by the circuit court's order refusing to dissolve the preliminary injunction. Although we find that the circuit court should have dissolved the injunction upon receipt of the DEP's July 21, 2016, letter relieving Dynamic Energy of its replacement water obligation, the injunction nevertheless continued in effect during the pendency of the instant appeal by virtue of the circuit court's January 20, 2017, ruling continuing the same. As such, it is clear that, by refusing to provide replacement water service as the circuit court had ordered it to do, Dynamic Energy ignored the court's direct command when it, unilaterally, stopped providing replacement water service.

In defense of its actions, Dynamic Energy has claimed that it could no longer afford to provide replacement water to the Plaintiffs because it was expending approximately $35,000 per month to do so and it does not have the financial resources to continue this expenditure. While we do not condone Dynamic Energy's actions, this matter is not properly before us for our consideration in the current procedural posture. We previously have held that "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syl. pt. 2, *Sands v. Security Tr. Co.*, 143 W. Va. 522, 102 S.E.2d 733 (1958). *See also* Syl. pt. 1, *Mowery v. Hitt*, 155 W. Va. 103, 181 S.E.2d 334 (1971) ("In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken."). Insofar as this is a nonjurisdictional matter, the facts of which

have not been fully developed before the circuit court and the merits of which have not been determined by that tribunal, we conclude that our consideration of and resolution of this issue is premature at this time. Therefore, we remand this case to the circuit court for the parties to raise the issue of Dynamic Energy's noncompliance with the circuit court's preliminary injunction during the pendency of the instant appeal.

## IV.

## CONCLUSION

For the foregoing reasons, in Docket Number 17-0168, the January 20, 2017, order of the Circuit Court of Wyoming County is hereby affirmed. Additionally, in Docket Number 17-0169, the January 20, 2017, order of the Circuit Court of Wyoming County is hereby reversed, and this case is remanded for further proceedings consistent with this opinion.

Docket Number 17-0168 - Affirmed.

Docket Number 17-0169 - Reversed and Remanded.